UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PAUL BAILEY, | : |
| | : |
| Plaintiff | : No. 4:CV-06-1640 |
| | : |
| vs. | : (Complaint Filed 08/22/06) |
| | : |
| | : (Judge Muir) |
| WARDEN PALAKOVICH, <u>et</u> <u>al</u>., | : |
| | : |
| Defendants | : |

**ORDER**

May 14, 2007

**BACKGROUND**

Plaintiff, Paul Bailey, an inmate formerly confined in the Smithfield State Correctional Institution, Huntingdon, Pennsylvania[1] ("SCI-Smithfield"), filed the above captioned civil rights action pursuant to 42 U.S.C. § 1983. He complains that defendants have been deliberately indifferent to his serious medical needs, in violation of his Eighth Amendment rights. (Doc. No. 1, complaint). Named as defendants in the complaint are George Weaver, Corrections Health Care Administrator; John Palakovich, SCI-Smithfield Superintendent;

---

1. Plaintiff was released from prison on April 10, 2007. He currently resides at 2056 North Bodine Street, Philadelphia, Pennsylvania. (Doc. No. 79).

and Dr. Long, SCI-Smithfield physician. Presently before the court is defendants' motions to dismiss the plaintiff's complaint. (Doc. Nos. 19, 34). The motions are fully briefed, and are ripe for disposition. For the reasons set forth below, defendants' motions to dismiss will be granted.

**Motion to Dismiss**

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of claims that fail to assert a basis upon which relief can be granted. See FED. R. CIV. P. 12(b)(6). When deciding a motion to dismiss for failure to state a claim, the court is required to accept as true all of the factual allegations in the complaint and all reasonable inferences that can be drawn therefrom. Langford vs. City of Atlantic City, 235 F.3d 845, 847 (3d Cir. 2000) (citing Nami vs. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)). "The complaint will be deemed to have alleged sufficient facts if it adequately put[s] the defendant on notice of the essential elements of the plaintiff's cause of action." Id. The court will not dismiss a complaint for failure to state a claim unless it appears beyond a doubt that "no relief could be granted under any set of facts that could be proved consistent with the allegations."

2

Swierkiewicz vs. Sorema N.A., 534 U.S. 506, 514 (2002). Consistent with these principles, the court must grant leave to amend before dismissing a claim that is merely deficient. <u>See</u> Shane vs. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000).

**<u>Factual Allegations of Plaintiff's Complaint</u>**

The following factual background is extracted from the plaintiff's complaint and the many documents attached in support of the complaint. (Doc. No. 1, complaint and attachments).

As a result of an accident on October 29, 2002, plaintiff suffers from permanent mobility problems. (Doc. No. 1, July 28, 2003 Assessment by Dr. Maurice Singer). Because of the mobility problems, plaintiff was permitted the use of certain ambulatory devices. In 2004, plaintiff was transferred from SCI-Camp Hill to SCI-Smithfield with a cane and knee brace. On March 15, 2005, plaintiff was moved to "I-Block, where the showers are equipped for handicapped accessability." (Doc. No. 1, Response to Inmate's Request to Staff Member). However, "as of 4/12/06, the order for the cane and knee brace was rescinded by Dr. Long." (Doc. No. 1, April 21, 2005 Memorandum from Warden Palakovich to Paul Bailey).

3

The plaintiff filed the instant action in which he states that defendant, Dr. Long "has all medical facts of my disabilities and he is not capable of making diagnosis or prognosis" which plaintiff claims "requires neuro/orthopic specialist." (sic) (Doc. No. 1, complaint). Plaintiff questions why "after reviewing record x-ray 3/15/05 he moved me to handicapped shower block, so how does he rescind cane, knee brace?" Id.

Plaintiff further alleges that Corrections Health Care Administrator George Weaver "is responsible for all ADA claims and has established my disability in grievance 114300 referring to x-ray saying cane and handrails are optimal devices for my serious condition still he allowed my devices to be rescinded." Id. On April 13, 2005, defendant Weaver responded to plaintiff's Grievance No. 114300-05 with the following summary of findings:

> In short, you want a transfer to Laurel Highlands because we have not equipped a shower with handrails for you to use. You feel this is a hardship and claim that we have not acted prudently.
>
> I have reviewed your medical record, paying attention to the x-ray. I am aware that we have allowed you to ambulate with a cane within the institution. You are functioning within the institution in a very safe

4

> manner, capable of ambulating back and forth to the various areas of the institution. Equally noted is your claim for handicap handrails in the shower. I agree that would be the optimal device for your situation.
>
> We provide a standard of health care equal to the community. Many people in the community with your condition will not have access to handrails and they still function safely. Many insurance companies do not pay for the addition of handrails. However, in the community, some people who have the finances will choose to provide that measure of safety by installing handrails.
>
> Your condition is not fitting the current criteria for a medical admission to Laurel Highlands. There is a waiting list of more needy people to go to Laurel Highlands in both categories of long-term skilled nursing facility and long-term boarding home/personal care. You do not fit those categories.
>
> However, I do agree that you should be processed for a transfer to any institution that has handrails installed in the shower stalls.
>
> By carbon copy of this grievance to your unit team, I am requesting that a transfer petition be submitted for you to go to any institution that has handrail/grab bar equipped showers.

(Doc. No. 1, Official Inmate Grievance Initial Review Response).

Finally plaintiff claims that Warden Palakovich "has received my medical file from Dr. Singer in order that I get appropriate medical care, so he is well informed of my

5

disability and retaliatory action of rescinding after final decision 132461, 135410 on 2/1/06, 2/27/06." (Doc. No. 1, complaint). In support of this claim, plaintiff submits copies of the responses to his appeal for final review in Grievance Nos. 132461 and 135410. These grievances were denied for the following reasons:

> Grievance No. 132461 - Final Review
>
> This is to acknowledge receipt of your appeal to final review of the above numbered grievance.
>
> In accordance with the provisions of DC-ADM 804, effective January 3, 2005, I have reviewed the entire record of this grievance; including your initial grievance, the grievance officer's response, your appeal from initial review and the superintendent's response. I have also carefully reviewed the issues you raise to final review.
>
> Upon completion of this review, it is the decision of this office to uphold the responses provided by staff at the institutional level. On October 24, 2005 the Corrections Health Care Administrator concluded that you should have been permitted to use your cane when walking from your RHU cell to the shower. He also ensured that he would follow-up with appropriate staff to prevent any future re-occurrences. On November 29, 2005, Major Eckard concurred that you would be permitted to use your cane when you are required to leave your cell. If you have not already done so, I suggest that you review DC-ADM 006, Reasonable Accommodations for Inmates with Disabilities Policy, Section VI, 4., for procedures to request accommodations.

>   For these reasons, your grievance must be upheld.

(Doc. No. 1, Final Review Response dated February 1, 2006).

>   Grievance No. 135410 - Final Review
>
>   This is to acknowledge receipt of your appeal to final review of the above numbered grievance.
>
>   In accordance with the provisions of DC-ADM 804, effective January 3, 2005, I have reviewed the entire record of this grievance; including your initial grievance, the grievance officer's response, your appeal from initial review and the superintendent's response. I have also carefully reviewed the issues you raise to final review.
>
>   Upon completion of this review, it is the decision of this office to uphold the responses provided by staff at the institutional level. I have not seen any evidence to date to support your disability/ADA claim. The efforts made by staff to address your needs while housed in the RHU negate your claims that you are not being treated humanely.
>
>   The responses provided at the institutional level are appropriate and in accordance with Department of Corrections' policies and procedures. Accordingly, your appeal to final review must be denied.

(Doc. No. 1, Final Review Response dated February 27, 2006).

For relief, plaintiff seeks compensatory and punitive damages, as well as, the "return [of] ambulatory devices and accommodation, plus transfer to appropriate facility that has an therapeutic community." (Doc. No. 1, complaint).

7

**Discussion**

To state a viable claim under 42 U.S.C. § 1983, a plaintiff must allege that the defendant, while acting under color of state law, deprived him of a right, privilege or immunity secured by the Constitution or by the laws of the United States. See 42 U.S.C. § 1983; see also West vs. Atkins, 487 U.S. 42, 48 (1988). A prerequisite for a viable civil rights claim is that the defendant directed, or knew of and acquiesced in, the deprivation of the plaintiff's constitutional rights. See Monell vs. Dep't of Social Serv., 436 U.S. 658, 694-95 (1978); Gay vs. Petsock, 917 F.2d 768, 771 (3d Cir. 1990); Rode vs. Dellarciprete, 845 F.2d 1195, 1207-08 (3d Cir. 1988). The plaintiff must allege that the defendant was personally involved in the events or occurrences that underlie the claim. See Atkinson vs. Taylor, 316 F.3d 257, 270-71 (3d Cir. 2003).

With respect to defendants Palakovich and Weaver, the only involvement of these defendants relates to their administrative role with respect to the handling of plaintiff's grievances and appeals. To the extent Bailey seeks to impose liability against these defendants for their role in denying his administrative grievances and appeals therefrom, it is well-

8

established that prisoners have no constitutionally protected right to a grievance procedure. See Jones vs. North Carolina Prisoners' Labor Union, Inc., 433 U.S. 119, 137-38 (1977) (Burger, C.J., concurring) ("I do not suggest that the [grievance] procedures are constitutionally mandated."); Wilson vs. Horn, 971 F. Supp. 943, 946 (E.D. Pa. 1997), aff'd, 142 F.3d 430 (3d Cir. 1998); McGuire vs. Forr, Civ. A. No. 94-6884, 1996 WL 131130, at *1 (E.D. Pa. March 21, 1996), aff'd, 101 F.3d 691 (3d Cir. 1996). While prisoners do have a constitutional right to seek redress of their grievances from the government, that right is the right of access to the courts and such a right is not compromised by the failure of the prison to address an inmate's grievance. See Flick vs. Alba, 932 F.2d 728, 729 (8th Cir. 1991) (federal grievance regulations providing for administrative remedy procedure do not create liberty interest in access to and resolution by that procedure); see also Johnson vs. Harding, et al., Civil No. 3:CV-99-0977, slip op. at 7-8 (M.D. Pa. Feb. 29, 2000)(Vanaskie, C.J.). Thus, since the Constitution does not create an entitlement to a grievance procedure or to access to any such procedure voluntarily established by a state, the failure to

9

favorably address a grievance and/or the denial of a grievance appeal does not implicate a federal constitutional right. Jones vs. Rohrer, Civil No. 1:CV-98-0520, slip. op. at p. 13 (M.D. Pa. March 2, 2000)(Munley, J.).

With respect to plaintiff's allegations of inadequate medical treatment and medical accommodations, the Eighth Amendment "requires prison officials to provide basic medical treatment to those whom it has incarcerated." Rouse vs. Plantier, 182 F.3d 192, 197 (3d Cir. 1999)(citing Estelle vs. Gamble, 429 U.S. 97 (1976)). In order to establish a claim under § 1983 based on the Eighth Amendment, an inmate must allege acts or omissions by prison officials sufficiently harmful to evidence deliberate indifference to a serious medical need. See Spruill vs. Gillis, 372 F.3d 218, 235 (3d Cir. 2004); Natale vs. Camden Cty. Correctional Facility, 318 F.3d 575, 582 (3d Cir. 2003).    In the context of medical care, the relevant inquiry is whether the defendant was: (1) deliberately indifferent (the subjective element) to (2) plaintiff's serious medical needs (the objective element). Farmer vs. Brennan, 511 U.S. 825 (1994); Monmouth County Correctional Institution Inmates vs. Lanzaro, 834 F.2d 326, 346

(3d Cir. 1987); West vs. Keve, 571 F.2d 158, 161 (3d Cir. 1979). Because only egregious acts or omissions can violate this standard, mere medical malpractice can not result in an Eighth Amendment violation, nor can disagreements over a prison physician's medical judgment. White vs. Napoleon, 897 F.2d 103, 108-10 (3d Cir. 1990).

A complaint that a physician or a medical department "has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment..." Estelle vs. Gamble, 429 U.S. 97, 106, (1976). "A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice." Id., 429 U.S. at 107. "Allegations of medical malpractice are not sufficient to establish a Constitutional violation." Spruill, 372 F.3d at 235. "[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights." Brown vs. Borough of Chambersburg, 903 F.2d 274, 278 (3d Cir. 1990). In sum, negligence, unsuccessful medical treatment, or medical malpractice do not give rise to a § 1983 cause of action, and an inmate's disagreement with medical

11

treatment is insufficient to establish deliberate indifference. See Durmer vs. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993).

A mere difference of opinion between the prison's medical staff and the inmate regarding the diagnosis or treatment which the inmate receives does not support a claim of cruel and unusual punishment. Farmer vs. Carlson, 685 F. Supp. 1335, 1339 (M.D. Pa. 1988). See McCracken vs. Jones, 562 F.2d 22, 24 (10th Cir. 1977); Smart vs. Villar, 547 F.2d 112, 113 (10th Cir. 1976), cert. denied, 450 U.S. 1041 (1981).

Additionally, if there is a dispute over the adequacy of the received treatment, courts have consistently been reluctant to second guess the medical judgment of the attending physician. Little vs. Lycoming County, 912 F. Supp. 809, 815 (M.D. Pa.), aff'd, 101 F.3d 691 (3d Cir. 1996). The key question is whether the defendant has provided the plaintiff with some type of treatment, regardless of whether it is what the plaintiff desires. Farmer vs. Carlson, 685 F. Supp. at 1339.

The objective component of an Eighth Amendment claim, i.e., whether a plaintiff's medical needs were serious, has its roots in contemporary standards of decency. Hudson vs. McMillian, 503

U.S. 1 (1992). A medical need is serious if it is one that has been diagnosed by a physician as mandating treatment or is one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. Johnson vs. Busby, 953 F.2d 349, 351 (8th Cir. 1991); Monmouth County Correctional Institution Inmates vs. Lanzaro, 834 F.2d at 347; Ramos vs. Lamm, 639 F.2d 559, 575 (10th Cir. 1980), cert. denied, 450 U.S. 1041 (1981); West vs. Keve, 571 F.2d 158, 162-63 n.6 (3d Cir. 1978). The serious medical need element contemplates a condition of urgency, one that may produce death, degeneration, or extreme pain. See Monmouth County Correctional Institution Inmates vs. Lanzaro, 834 F.2d at 347; Archer vs. Dutcher, 733 F.2d 14, 16-17 (2d Cir. 1984); Todaro vs. Ward, 565 F.2d 48, 52 (2d Cir. 1977).

Assuming, without deciding, that plaintiff's medical needs were serious in the constitutional sense, the allegations in the complaint clearly illustrate that plaintiff received medical attention and medical accommodations. At best, plaintiff's complaint demonstrates his disagreement with Dr. Long's April 12, 2006 decision to rescind the order for plaintiff's cane and knee brace. Plaintiff's disagreement with

13

Dr. Long's course of treatment, however, does not serve as a predicate to liability under § 1983.  <u>See</u>, White vs. Napoleon, 897 F.2d at 108-110 (3d Cir. 1990)(No deliberate indifference claim is stated when a doctor disagrees with the professional judgment of another doctor since "[t]here may, for example, be several acceptable ways to treat an illness."); Inmates of Allegheny County Jail vs. Pierce, 612 F.2d 754, 762 (3d Cir. 1979)(claim for deliberate indifference does not arise just because one doctor disagrees with the diagnosis of another). This is particularly so in light of the fact that there are no allegations in the complaint that any of the defendants intentionally withheld medical treatment from plaintiff in order to inflict pain or harm upon plaintiff.  <u>Farmer</u>; <u>Rouse</u>.

Thus, the allegations contained within the complaint establish meaningful efforts by the defendants to provide plaintiff with necessary medical accommodations, and an attendant mental state that falls substantially short of deliberate indifference.

Finally, to the extent that plaintiff is attempting to raise a claim under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131, et seq., Title II, 42 U.S.C. §

14

12132 provides in relevant part that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services or activities of a public entity or be subjected to discrimination by such entity." Individual defendants, however, are not public entities within the meaning of Title II of the ADA and are, therefore, not subject to suit. Emerson vs. Thiel College, 296 F.3d 184, 189 (3d Cir. 2002)(Individuals are not subject to liability under "Titles I or II of the ADA, which prohibit discrimination by employers and public entities respectively."); Wesley vs. Vaughn, 2003 U.S. Dist. LEXIS 4434 (E.D. Pa. 2003)(Prison supervisors could not be made defendants in their individual capacities in a lawsuit in which plaintiff, a prisoner, alleged the individuals failed to accommodate plaintiff's need to avoid second hand smoke.)

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1. Defendants' motions to dismiss the plaintiff's complaint (Doc. Nos. 19, 34) are **GRANTED**.

2. The Clerk of Court is directed to **CLOSE** this case.

3.  Any appeal taken from this order will be deemed frivolous, without probable cause, and not taken in good faith.


                            s/Malcolm Muir
                            MUIR
                            United States District Judge